# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

JAMES L. LUPTON, )
)
       Plaintiff, )
)
v. ) Case No. CIV-13-1068-M
)
AMERICAN FIDELITY ASSURANCE )
COMPANY, )
)
       Defendant. )

## ORDER

Before the Court is Defendant American Fidelity Assurance Company's ("AFA") Motion for Summary Judgment and Brief in Support, filed February 3, 2015. On March 3, 2015, plaintiff responded, and on March 17, 2015, AFA replied. Based on the parties' submissions, the Court makes its determination.

I.    Introduction[1]

Plaintiff, a male over fifty (50) years of age, was employed continuously with AFA from on or about June 1, 1983, until he was terminated on or about January 24, 2013. Plaintiff filed this action on October 7, 2013, alleging employment discrimination due to race, gender, and age in violation of federal and state laws including the Age Discrimination in Employment Act, 29 U.S.C. § 626(c) ("ADEA"), Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5(f) ("Title VII"), 42 U.S.C. § 1981 ("Section 1981"), and the Oklahoma Anti-Discrimination Act, Okla. Stat. tit. 25, §§ 1101, et seq. ("OADA").[2]

---

[1] The facts set forth are either undisputed or viewed in the light most favorable to plaintiff, the non-moving party.

[2] On May 20, 2014, plaintiff was granted leave of Court to amend his complaint, and on June 6, 2014, plaintiff filed his Amended Complaint.

AFA is a family owned business which provides supplemental health insurance benefits and financial services to educational employees, auto dealerships, health care providers, and municipal workers across the United States. Due to the nature of AFA's business, AFA has implemented a written Corporate Security Policy ("Security Policy") which prohibits employees from using any type of hardware or software tools that could compromise the security of AFA's electronically stored information. AFA also maintains an Electronic Information Resources Use Policy ("Use Policy") which sets the directives for AFA's employees' use of electronic information resources and indicates that any AFA employee found to have violated the Use Policy may be subject to disciplinary action, up to and including termination of employment.

Plaintiff began his employment at AFA on June 1, 1983, as a Programmer Analyst within the Information Systems Department. Plaintiff received numerous promotions and rate increases during his time at AFA and by the end of plaintiff's tenure at AFA he was acting as Vice President, Director of Database Administration. On November 10, 2011, plaintiff acknowledged in a signed memorandum that he had plugged in an external hard drive device into his company laptop.[3] The device contained an inappropriate Pocket PC software application named "Positions Roulette", which depicted sexually explicit images on plaintiff's company laptop. Plaintiff acknowledged that the memorandum served as a warning and that further violations of this nature could result in further disciplinary action, up to and including termination of employment with AFA.

From 2001 until 2011, plaintiff supervised the Field Hotline Team. At times relevant to this case, the Field Hotline Team consisted of one female employee, Sheliah Adams ("Adams"), and four male employees, Gary Tripp ("Tripp"), Gerald Crabbe ("Crabbe"), David McClam

---

[3] The memorandum was issued by plaintiff's supervisor at the time Bob Willingham ("Willingham").

("McClam"), and David Divelbiss ("Divelbiss"). In December 2011, Kim Fisher ("Fisher"), who at the time was plaintiff's second line supervisor, removed plaintiff from his Field Automation position, which included his supervision of the Field Hotline Team, despite the objections of plaintiff and plaintiff's supervisor Willingham. Plaintiff was replaced by Traci Tabyanan ("Tabyanan"), and on or around March of 2012, the Field Hotline Team was placed under the supervision of Jonathan Hinkle ("Hinkle"). In September of 2012, the Field Hotline Team was relocated from its shared office space, which consisted of office cubicles, on the seventh floor of AFA's office building to offices (which were open and visible to other AFA employees) on the fifth floor.

On October 23, 2012, Adams expressed to Hinkle her relief in moving from the previous offices on the seventh floor and reported to Hinkle that her fellow Field Hotline colleagues would often watch pornographic movies and view pornographic materials during working hours, which made her feel extremely uncomfortable, embarrassed, and trapped. That same day, Hinkle reported Adams' sexual harassment complaint to AFA's human resources department. AFA launched an internal investigation into Adam's complaint. AFA retained an independent forensic expert, Calvin Weeks ("Weeks"), to review laptops and external drives of the Field Hotline Team as a part of the investigation. The day after Adams' complaint was received, AFA personnel retrieved company owned assets from Tripp, Crabbe, McClam, Adams, and Divelbiss for forensic analysis.

Mark Nance ("Nance"), then Vice President of Audit for AFA, made the decision to have plaintiff's computer reviewed as a part of the investigation, due to plaintiff's previous history of having pornographic materials on his company computer and the fact that plaintiff had supervised the Field Hotline Team during the time some of the alleged activity complained of by

Adams occurred. Plaintiff's computer was taken for investigation despite the fact that during her interview, Adams reported that she did not believe that plaintiff was aware that members of the Field Hotline Team were engaging in the activities complained of by her, a fact that Nance was not aware of when he made his decision to inspect plaintiff's computer. However, Nance admitted that having this knowledge beforehand would not have made a difference in his decision to investigate plaintiff's computer. Nance, however, did not believe it was necessary to investigate Tabyanan and Hinkle's computers, despite the fact that they were also supervisors of the Field Hotline Team during the time the activities subject to Adams complaint occurred.

As to Weeks' investigation regarding plaintiff's computer,[4] plaintiff disputes the findings of the investigation[5] and only admits that he changed his computer settings by turning off the browsing and cookies settings, which was not against company policy; that he had left his Tiger Woods CD game in his computer, which he did not believe was against company policy; that he transferred his personal documents to an off-site document storage website, after he had been told by Fisher that having personal documents on AFA computers was a violation of the Use Policy, which she later admitted was a misstatement; and that his daughter had used his AFA

---

[4] Plaintiff objects in his response to facts provided by AFA regarding Weeks' investigation and report as hearsay. The Court overrules plaintiff's objection and will allow the evidence of Weeks' investigation, including the report ultimately provided by Weeks, to be admitted and considered for purposes of ruling on this motion. The Court finds that evidence of Weeks' investigation, including his report, is being offered to establish AFA's state of mind in its decision to terminate plaintiff. *See Adkins v. Tower Corp.*, 141 F.3d 1184 (10th Cir. 1998) (unpublished) (citing *Faulkner v. Super Valu Stores, Inc.*, 3 F.3d 1419, 1434 (10th Cir. 1993)) ("In *Faulkner,* this court held admissible certain out-of-court statements which were offered to establish [defendant's] state of mind in making its [employment] decisions and [were] not offered for the truth of the matter asserted.") (internal quotations omitted).

[5] Weeks' investigation revealed that the use history from plaintiff's laptop was missing, plaintiff's computer was used excessively for personal use, confidential AFA documents had been downloaded to an off-site document storage website, and another individual outside of AFA was allowed to use plaintiff's computer.

laptop while they were in the emergency room, but he did not give her his login and password information. On January 24, 2013, plaintiff was terminated by AFA for violating AFA's Security Policy, Use Policy, and for providing misleading contradictory statements in connection with the investigation relating to the same. Plaintiff disputes the reasons for his termination, and on February 6, 2013, plaintiff filed an EEOC charge against AFA alleging he was discriminated against based on his age and gender.

AFA now requests this Court, pursuant to Federal Rule of Civil Procedure 56, to enter summary judgment in favor of AFA on plaintiff's reverse gender discrimination, age discrimination, and race association claims.[6]

## II. Summary Judgment Standard

"Summary judgment is appropriate if the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The moving party is entitled to summary judgment where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. When applying this standard, [the Court] examines the record and reasonable inferences drawn therefrom in the light most favorable to the non-moving party." *19 Solid Waste Dep't Mechs. v. City of Albuquerque*, 156 F.3d 1068, 1071-72 (10th Cir. 1998) (internal citations and quotations omitted).

"Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Furthermore, the non-movant has a burden of doing more than simply showing there is some metaphysical doubt as to the material facts. Rather, the relevant inquiry is whether the evidence presents a sufficient disagreement to

---

[6] Plaintiff, in his response, abandoned his race association claim and, therefore, the Court finds AFA's motion for summary judgment regarding plaintiff's race association claims is now moot.

5

require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Neustrom v. Union Pac. R.R. Co.*, 156 F.3d 1057, 1066 (10th Cir. 1998) (internal citations and quotations omitted).

III. Discussion

    A. Reverse Gender Discrimination[7]

Under Title VII,

> It is unlawful to discharge any individual or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.

*Khalik*, 671 F.3d 1188, 1192 (10th Cir. 2012) (citing 42 U.S.C. § 2000e-2(a)) (internal quotations omitted). Further under the OADA,

> A. It is a discriminatory practice for an employer:
>
> 1. To fail or refuse to hire, to discharge, or otherwise to discriminate against an individual with respect to compensation or the terms, conditions, privileges or responsibilities of employment, because of race, color, religion, sex, national origin, age, genetic information or disability,

Okla. Stat. tit. 25, § 1302(A)(1).

"Under the burden-shifting framework of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–04 (1973), the plaintiff bears the initial burden of establishing a prima facie case of sex discrimination, whereupon the burden shifts to the employer to articulate a legitimate,

---

[7] Plaintiff, in his response, asserts that this case is actually a true gender discrimination case and not a reverse discrimination case. Plaintiff contends that since all of the decision-makers involved in the decision to terminate him were women, his claim should be analyzed as a gender discrimination claim and not a reverse discrimination claim. Plaintiff fails to cite to any authority from the Tenth Circuit Court of Appeals or the United States Supreme Court to support his contention that where the decision makers are all female, and the plaintiff is a male, the case is not one of reverse discrimination, but true gender discrimination. As a result, this Court will analyze plaintiff's gender discrimination claim as a reverse discrimination claim under the authority cited by the Tenth Circuit Court of Appeals.

nondiscriminatory reason for the discharge, and then back to the plaintiff to show that the stated reason is pretextual." *Argo v. Blue Cross & Blue Shield of Kan. Inc.*, 452 F.3d 1193, 1201 (10th Cir. 2006). "To establish a prima facie case, a plaintiff ordinarily must show that (1) the plaintiff belongs to some protected class, (2) the plaintiff was qualified for the position or benefit at issue, (3) the plaintiff suffered an adverse employment action, and (4) the plaintiff was treated less favorably than others." *Id.* However, in a situation such as the case at bar, where plaintiff is a not a member of a traditionally protected class, the Tenth Circuit has adopted a modified *McDonnell Douglas* standard. *See Nortari v. Denver Water Dep't.*, 971 F.2d 585, 590 (10th Cir. 1992). A "reverse [gender] discrimination plaintiff states a prima facie case only if he can show background circumstances that demonstrate that his employer is one of those unusual employer who discriminates against the majority" or "indirect evidence sufficient to support a reasonable probability, that but for the plaintiff's status the challenged employment decision would have favored the plaintiff." *Id.*

AFA asserts that plaintiff has failed to establish a prima facie case for his reverse gender discrimination claim. AFA specifically asserts that plaintiff has failed to show that AFA is that unusual employer that discriminates against men and, further, that plaintiff has failed to show indirect evidence that but for plaintiff being a man he would not have been terminated. Plaintiff asserts the following evidence shows that AFA was that unusual employer who discriminates against men: (1) AFA's procedural irregularities in excluding plaintiff's supervisor Willingham from the decision to terminate plaintiff; (2) Fisher's pattern of giving plaintiff's responsibilities to females, and lowering plaintiff's 2012 evaluation performance, over the objection of plainitff's supervisor; and (3) AFA's male/female ratio at the vice presidents level. Further, plaintiff contends that the fact that he was replaced by a male after his termination does not

7

foreclose the ability of plaintiff to prove that but for the fact he was a man he would not have been terminated.

The Court has carefully reviewed the parties' briefs and evidentiary submissions. Viewing the evidence in the light most favorable to plaintiff and viewing all reasonable inferences in plaintiff's favor, as the Court must when addressing a motion for summary judgment, the Court finds as a matter of law that plaintiff has failed to establish a prima facie case against AFA with respect to his reverse gender discrimination claim. Specifically, the Court finds that plaintiff has not provided any evidence that establishes that AFA is that unusual employer that discriminates against men or that he was terminated from his position at AFA because he was a man.

Regarding AFA's alleged procedural irregularities, the Court finds this evidence does not support a finding that AFA is that unusual employer that discriminates against men. The first instance in which plaintiff's responsibilities were taken away from him was in August of 2010, when David Carpenter ("Carpenter"), AFA's President and COO, expressed his frustrations with plaintiff's performance on the AF Enroll project via an email to Fisher and Willingham. Carpenter directed Fisher and Willingham to come up with a recommendation on what course of action should occur with respect to plaintiff and the project. *See* AFA's Mot. for Summ. J. Ex. 35, Email from David Carpenter to Kim Fisher and Bob Willingham. It was Willingham, after discussions with Fisher, who made the decision to remove plaintiff from the AF Enroll project. Further, plaintiff was replaced on the AF Enroll project with a man Alan Yancy. *See* AFA's Mot. for Summ. J. Ex. 36, PMC Meeting Minutes, AFA Lupton 09706-09709. The second instance when plaintiff had responsibilities removed from him was in December 2011, when Fisher removed him from Field Automation. While Willingham was not involved in this decision and

did not agree with this action, Fisher explained in her deposition that managers and business leaders were getting frustrated with plaintiff's performance. *See* AFA's Mot. for Summ. J. Ex. 16, Deposition of Kim Fisher 189:3 – 190:17. Further, plaintiff asserts that his replacement in Field Automation was Tabyanan, a woman with no experience in Field Automation. However, Tabyanan was only the supervisor of the Field Hotline Team for a few months before the Field Hotline Team was placed under the supervision of Hinkle. With respect to the decision-makers who made the decision to terminate plaintiff, plaintiff contends that they were all women[8], and his supervisor Willingham was not involved in the decision; however, in his Amended Complaint, plaintiff states that in October 2012, Diana Bittle was placed as his immediate supervisor, and she, in fact, was a part of the decision to terminate plaintiff. Am. Compl. ¶¶ 17 & 20. Lastly, plaintiff asserts that the male/female ratio at the vice presidents level provides evidence to establish a prima facie case of reverse gender discrimination; however, AFA provides evidence through its organizational chart to show that majority of AFA's highest level positions are occupied by men. *See* AFA's Mot. for Summ. J. Ex. 44, AFA's Organizational Chart.

Further, plaintiff contends the fact that he was replaced by a man is not relevant to showing the indirect evidence that but for the fact he was a man he would not have been terminated. Plaintiff cites to *Perry v. Woodward*, 199 F.3d 1126 (10th Cir. 1999) and *Munoz v. St. Mary-Corwin Hosp.*, 221 F.3d 1160 (10th Cir. 2000) to demonstrate that replacement by a male does not defeat his ability to establish a prima facie case in a reverse gender discrimination case. The Court finds the above cases are inapplicable to plaintiff's reverse gender discrimination

---

[8] The decision to terminate plaintiff was made by Jeanette Rice, Executive Vice-President of Human Resources; Diana Bittle, Vice-President of Software Solutions; plaintiff's supervisor at the time of his termination, Kim Fisher, Senior Vice President and Chief Information Officer: and Beverly Wood, Assistant Vice President of Human Resources.

claim. *Perry* was a race discrimination case brought under Section § 1981 in which the court held that plaintiff was still successful in establishing her prima facie case despite the fact that plaintiff's position was filed by another Hispanic woman. *See Perry*, 199 F.3d at 1140-1141. Further, *Munoz* was an age discrimination case brought under the ADEA in which the court found that "the fact that one person in the protected class has lost out to another person in the protected class is . . . irrelevant . . . ." *Munoz*, 221 F.3d at 1166 (citing *O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 312 (1996)). Thus, both *Perry* and *Munoz* were true discrimination cases analyzed under the *McDonnell Douglas* framework. The prima facie case required to establish discrimination for the plaintiffs in *Perry* and *Munoz* was different than what plaintiff is required to establish for his reverse gender discrimination claim.

Accordingly, for the reasons set forth above, the Court finds that AFA is entitled to summary judgment as to plaintiff's reverse gender discrimination claim.

B. Age Discrimination

The United States Supreme Court in *O'Connor* assumed that the *McDonnell Douglas* framework applied to age discrimination cases brought under the ADEA. *See O'Connor*, 517 U.S. at 311. Just as in Title VII discrimination cases, plaintiff must show (1) he was in the age group protected by the ADEA[9]; (2) he was discharged or demoted; (3) at the time of his discharge or demotion, he was performing his job at the level that met his employer's legitimate expectations; and (4) following his discharge or demotion, he was replaced by someone of comparable qualifications outside the protected class. Further, "[i]n *O'Connor*, the Supreme Court held that a plaintiff does not have to prove that he was replaced by someone outside the protected class to establish the fourth element of the *McDonnell Douglas* prima facie case."

---

[9] The ADEA protects individuals at least 40 years of age. *See* 29 U.S.C. § 631(a).

*Munoz*, 221 F.3d at 1166. "[A] prima facie case of age discrimination requires evidence adequate to create an inference that an employment decision was based on an illegal discriminatory criterion, . . ." *Id*. (quoting *Int'l Bhd. of Teamsters v. U.S.*, 431 U.S. 324, 358 (1977)) (internal quotations omitted).

AFA asserts that plaintiff has failed to establish a prima facie case for his ADEA claim as he is was replaced by a male, only one year his junior. Plaintiff contends the fact that AFA hired a male just one year younger to him is irrelevant as to whether he was discriminated against based on his age. Plaintiff cites to instances at AFA where age discriminatory remarks were directed towards plaintiff and the AFA workforce and to the fact, he was not selected to be a member of the Roles and Responsibilities Committee (because of his age).[10]

The Court has carefully reviewed the parties' briefs and evidentiary submissions. Viewing the evidence in the light most favorable to plaintiff and viewing all reasonable inferences in plaintiff's favor, as the Court must when addressing a motion for summary judgment, the Court finds that plaintiff has presented sufficient evidence to create a genuine issue of material fact as to whether plaintiff was discriminated against because of his age when he was terminated by AFA. Specifically, the Court finds that evidence of the age related remarks made by Fisher directed at plaintiff – telling plaintiff he was a "dinosaur" and to "upgrade [his] skills", - as well as plaintiff being told by Fisher that he was not selected to serve on the succession planning team because "she wanted the younger people who were going to move forward and take the company into the future to be a part of the decision-making that were going

---

[10] AFA contends that plaintiff cannot rely on any alleged instances of discrimination in the past which are now time-barred from plaintiff bringing a claim. However, "[p]laintiffs are not precluded from introducing quite probative evidence of earlier acts of discrimination to support a claim of current discriminatory intent, even if the prior events are beyond the limitations period." *Plotke v. White*, 405 F.3d 1092, 1106 – 1107 (10th Cir. 2005).

to reorganize the organization" and remarks made by Wood in an information systems mangers meeting, of which plaintiff was a part, stating – "you people who are up there in years and have been here a long time, put your tape recorder, put your cassette player or eight track player down and I'll hand you a smartphone"- and, the fact that plaintiff had previously made an oral age discrimination complaint to Jeanette Rice with respect to Fisher, could lead to an inference of age discriminatory intent with respect to plaintiff's termination. *See* Plf.'s Resp. to Mot. for Summ. J. Ex. 12, Plaintiff's Deposition 255:7-9, 266:2 – 267:2, and 261:23 – 262:2 and Ex. 33, Deposition of Jeanette Rice 172:9-173:6.

Accordingly, the Court finds that plaintiff has presented sufficient evidence to establish a prima facie case of age discrimination. Thus, the Court must now determine whether AFA has proffered a legitimate, non-discriminatory reason for its decision to terminate plaintiff. Having reviewed the parties' submissions, the Court finds that AFA has proffered a legitimate, nondiscriminatory reason – violation of AFA's Security Policy, Use Policy and for providing misleading contradictory statements in connection with the investigation relating to the same.

Because AFA has articulated a legitimate, non-discriminatory reason for its decision, the burden now shifts back to plaintiff to show that the stated reason is pretextual. *Argo*, 452 F.3d at 1201. The Court has carefully reviewed the parties' briefs and evidentiary submissions. Viewing the evidence in the light most favorable to plaintiff and viewing all reasonable inferences in plaintiff's favor, as the Court must when addressing a motion for summary judgment, the Court finds that plaintiff has presented sufficient evidence to create a genuine issue of material fact as to whether AFA's proffered reason is pretextual.

The Court finds that plaintiff's company computer was subject to a forensic investigation based on a sexual harassment complaint from Adams that her colleagues on the Field Hotline

12

Team were watching pornographic materials on their company computers, which made her uncomfortable. At the time of the complaint, plaintiff was no longer the supervisor of the Field Hotline Team and Adams herself admitted that she did not believe that plaintiff was aware of the activities that were occurring with the Field Hotline Team that led to her complaint. Further, there were two subsequent supervisors of the Field Hotline Team during the time the activities that Adams complained of were occurring whose company computers were not subject to the investigation. Additionally, when the Field Automation supervision was taken away from plaintiff, it was given to a younger employee who had no experience.[11]

As to the findings of Weeks' forensic investigation of plaintiff's computer, AFA found that plaintiff had (1) wiped all use history with an unapproved software or external device, violating AFA' Security Policy and Use Policy; (2) excessively used his company computer inappropriately, including finding that the Sex Positions Roulette Game, plaintiff was previously warned to delete from his computer was still on there, a spreadsheet containing 100+ pornography sites was found on plaintiff computer, and a Tiger Woods game was found in the CD portal of one of plaintiff's laptops; (3) uploaded confidential AFA documents to an off-site document storage website; and (4) allowed someone else to use his company computer. Plaintiff presents evidence, through the depositions of Wood and Fisher, that Weeks' report issued on May 8, 2013, in fact found no evidence that plaintiff had wiped his computer. *See* Plf.'s Resp. to Summ. J. Ex. 45, American Fidelity Internal HR – Jim Lupton Report AFA Lupton 0794. Plaintiff did admit that he turned off the browsing and cookie settings, which Wood admitted she did not recall telling plaintiff that was a violation. Plf.'s Resp. to Mot. Summ. J. Ex. 9,

---

[11] While the fact that plaintiff was replaced by Tabyanan, a younger female, with no experience in Field Automation, was not relevant to plaintiff's reverse gender discrimination claim, the Court finds that replacing plaintiff with Tabyanan could be pretextual evidence to support plaintiff's age discrimination claim.

Deposition of Beverly Wood 226:20 – 25. Further, Weeks reported to AFA the Sex Roulette Positions game was in a backup file on plaintiff's computer. Plf.'s Resp. to Mot. Summ. J. Ex. 20, Deposition of Calvin Weeks, 112:13-113:14. As to the spreadsheet, it had not been accessed since 2001 and was pieced together in order to restore the original file. Plf.'s Resp. to Mot. Summ. J. Ex. 20, Deposition of Calvin Weeks, 42:16-24. Further, the roulette game and spreadsheet was not mentioned in Weeks' May 8, 2013 forensic report. *See* Plf.'s Resp. to Summ. J. Ex. 45, American Fidelity Internal HR – Jim Lupton Report AFA Lupton 0793. Additionally, plaintiff has provided evidence to show that the fact that the Tiger Woods game was in his CD player on his laptop was not a violation of the Use Policy. Plf.'s Resp. to Mot. Summ. J. Ex. 17, Deposition of Michael Leonard 141:24-142:2. Further, initially plaintiff was told that having personal documents on his computer was a violation, but Fisher later told plaintiff that she misstated AFA's policy regarding having personal documents on his computer. Plf.'s Resp. to Mot. Summ. J. Ex. 10, Deposition of Kim Fisher 286:22-287:4. Additionally, there was no evidence presented that plaintiff had saved a confidential AFA file on an off-site document storage website. Plf.'s Resp. to Mot. Summ. J. Ex. 10, Deposition of Kim Fisher 290:23 – 291:4. Lastly, while plaintiff initially denied that he allowed anyone to use his computer, he did admit that his daughter used his computer while they were in the emergency room and that she did not have access to his login or password. Plf.'s Resp. to Mot. Summ. J. Ex. 9, Deposition of Beverly Wood 282:19 – 22.

Accordingly, the Court finds that AFA is not entitled to summary judgment on plaintiff's age discrimination claim.

IV. Conclusion

Accordingly, for the reasons set forth above, the Court GRANTS IN PART AND DENIES IN PART AFA's Motion for Summary Judgment and Brief in Support [docket no. 49] as follows:

(1) The Court GRANTS AFA's motion for summary judgment as to plaintiff's reverse gender discrimination claim; and

(2) The Court DENIES AFA's motion for summary judgment as to plaintiff's age discrimination claim.

**IT IS SO ORDERED this 10th day of April, 2015.**

VICKI MILES-LaGRANGE
CHIEF UNITED STATES DISTRICT JUDGE